# Wheeling.

## AMBLER, TRUSTEE, v. LEACH, et al.

Decided November 15, 1879.

(*Absent, JOHNSON, JUDGE.)

1. A writ otherwise regular is not absolutely null and void, because its date is blank and it is not signed by the clerk. Such writ is voidable, and may be avoided by a motion to quash it made by the defendant; but if not so avoided, or in some other manner, in the suit, and a judgment is rendered against the defendant by default on such writ, and such judgment is not set aside by motion to the court or by writ of error, it is valid and binding as a judgment.

2. A party, or his trustee to whom his land is conveyed, may, as a general rule, sustain a bill to have a void judgment declared void so as to remove the cloud produced by such void judgment on the real estate which belonged to the defendant.

3. The return of a *fi. fa.* to the clerk's office before it is levied, by the direction of the plaintiff's attorney, without the knowledge of the surity does not discharge a surety in the judgment from liability.

4. A party conveys all his lands and personal property, and choses in action to a trustee, to pay all his debts, not specifying them, the trustee cannot generally file a bill against a particular judgment-creditor holding a lien on the land when the deed of trust was executed, asking the court to ascertain and decree whether this particular judgment had been paid in whole or in part. If this in the particular case could not be ascertained by any legal proceeding, still the trustee in such a case, unless there be peculiar circumstances taking the case out of the general rule, could, if necessary, only file a bill in the nature of a creditor's bill to ascertain all the prior judgments unsatisfied and the amounts still due on them, as well as the amount due creditors severally, secured by the deed of trust; and thus avoid a multiplicity of suits against each judgment and general creditor.

*A party to the suit.

1879
Special Term.

Ambler, Trustee
v.
Leach et al.

Appeal from and *supersedeas* to a decree of the circuit court of the county of Wood, rendered on the 12th day of October, 1878, in a cause in said court then pending, wherein B. M. Ambler, trustee, was plaintiff, and Thompson Leach and others were defendants, allowed upon the petition of said Ambler.

Hon. James M. Jackson, judge of the fifth judicial circuit, rendered the decree appealed from.

GREEN, PRESIDENT, furnished the following statement of the case :

At the fall term, 1869, an office-judgment was confirmed by the circuit court of Wood county in favor of James M. Stephenson, Thompson Leach and K. B. Stephenson, partners under the firm name and style of Stephenson, Leach & Co., against John Connell and J. G. Blackford for $310.49, with interest from September 25, 1869, till paid, and costs of suit. The suit in which this judgment was rendered was based on a promissory negotiable note, made by John Connell, payable to the order of J. G. Blackford, and by him endorsed. This note was dated December 17, 1868, and was payable on April 1, 1869, and endorsed to plaintiffs by J. G. Blackford; and not being paid, it was duly protested, the costs of protest being $1.75. The summons, by which this suit was commenced, was as follows :

" STATE OF WEST VIRGINIA.

" *To the Sheriff of Wood County, Greeting :*

"We command you that you summon John Connell and J. G. Blackford to appear before the judge of our circuit court for Wood county at rules, to be held in the clerk's office of said court, on the first Monday in August next, to answer James M. Stephenson, Thompson Leach and K. B. Stephenson, partners under the name and style of Stephenson, Leach & Co., of a plea of debt for $301.75, damages $20.00. And have then and there this writ.

"Witness, William H. Hatcher, clerk of our said circuit court, at the court house of said county, the ——— day of ——— and in the ——— year of the State."

The return on this summons was as follows:

Sheriff's return—"Executed on John Connell and J. G. Blackford by delivering to each a copy of the within writ, August 2, 1869.

"C. ANDERSON, D. S.,
"for W. H. Matingly, S. W. C."

On November 13, 1869, a fi. fa. was issued on this judgment returnable to January rules, 1870. This execution was returned by the sheriff, he making the following return: "Returned to office by order of the plaintiff's attorney. W. H. Matingly, S. W. C." And on the 11th day of January, 1870, an abstract of this judgment was duly and legally docketed on the judgment lien docket, in the clerk's office of the county court of Wood county. At the time this judgment was rendered J. G. Blackford owned several parcels of land in said county, and also a considerable amount of personal property. On the 23d day of February, 1876, he conveyed all his property, real and personal, to B. Mason Ambler, trustee, for the payment of all his debts ratably. This conveyance was duly recorded the same day, October 12, 1878, that this trustee instituted this suit.

In his bill he states all the above facts, filing with it a copy of the record in this common law suit, a copy of this execution and return thereon and an abstract of this judgment from said judgment lien docket. He alleges in his bill that this judgment was a mere nullity, as the summons, which was the commencement of the suit, was not dated and was not signed by the clerk. But says that it being claimed to be a valid judgment, and being on the judgment lien docket, it is a cloud on the real estate conveyed to him as trustee, and prevents his selling to advantage the real estate conveyed by said deed, as he is thereby authorized and directed to do. He also alleges that J. G. Blackford was a mere security in this debt, on

1879
Special Term.

Ambler, Trustee
v.
Leach et al.
which this judgment was rendered; and that if the judgment had been valid, it has been released by the plaintiffs in said common law suit by directing without the knowledge or consent of said Blackford, the surety, the sheriff to return said execution to the office, as shown by his return, they thereby releasing the property of the principal in said debt, said Connell, from the lien acquired by said debt, he having then an abundance of personal property to pay this execution. And he further charges in this bill, "that the said debt was fully paid and satisfied by said Connell before the said writ was so returned by the sheriff." The two Stephensons being dead, the bill makes Okey Johnson, their several executor, Thompson Leach, J. G. Blackford and John Connell defendants, and asks the court to declare said judgment null and void, and the debt in said note mentioned paid and satisfied, and for general relief.

To this bill the defendants, Thompson, Leach and Okey Johnson, executor of James M. Stephenson, and Okey Johnson, executor of H. B. Stephenson, filed on September 16, 1868, a general demurrer, and the plaintiff joined therein, and on the 12th day of October, 1878, the court by its final decree sustained this demurrer and dismissed the bill and decreed that the plaintiff pay to said defendants their costs in said suit expended.

From this decree the plaintiff, B. M. Ambler, on March 22, 1879, obtained from this Court an appeal and *supersedeas*.

*W. L. Cole*, for appellant, cited the following authorities:

Code, ch. 124, §2; 6 Gratt. 210; 1 W. Va. 16; *Id.* 1; Freeman Jugmts., §126; Const. Va. (1851) Art. VI, §24; Const. W. Va. (1863) Art. I, §5; 1 Smith Lead. Cas., Part II (7 Am. ed.) 1114; 14 How. 334; 3 Otto 277; 6 Leigh 575; 6 Rob. Pr. 439 *et seq.*; 7 Rob. Pr. 796 *et seq.*; 3 Johns. 459; 28 Conn. 7; 1 Ohio (N. S.) 369; 30 Ill. 215; Story Eq. Pl., §§150, 207, 215, 216, 217.

1879
Special Term.

Ambler,Trustee
v.
Leach *et al.*

*A. L. Boreman,* for appellees, cited the following authorities :

Code, ch. 134 ; 16 Gratt. 134 ; 21 Gratt. 382 ; 12 W. Va. 297 ; 27 Gratt. 624 ; 10 Pet. 449 ; 10 Wall. 308 ; 9 Leigh 119 ; 9 Gratt. 328 ; 18 Gratt. 364 ; 19 Gratt. 14 ; 12 W. Va. 1 ; 2 Story Eq Jur. §1575 ; 1 Rev. Code (1819) p. 37, §18 ; *Id.,* p. 498, §40 ; Code 1860, p. 54, §24 ; Code W. Va., p. 20, §5 ; Const. W. Va. (1872) Art. II, §8 ; Code, 595, §5 ; 10 Gratt. 228 ; 11 Gratt. 625.

GREEN, PRESIDENT, delivered the opinion of the Court :

The first question presented by this record is : Was the judgment of the circuit court of the fall term, 1869, null and void, because the summons in the suit in which such judgment was rendered was blank as to its date, and because it was not signed by the clerk or his deputy ? The appellant's counsel claims that it is absolutely void, and should be so pronounced by this Court ; while the appellees claim that it was only voidable by plea in abatement, or motion to quash it in the original suit, or at furthest by having the judgment set aside by a motion by the defendants before the circuit court which rendered it, or, if it refused, by a writ of error after such refusal and a reversal of this judgment by this Court ; and these steps not having been taken, this judgment is valid, and a lien on the real estate of the defendant, Blackford, superior to the lien created by said deed of trust.

As remarked by Judge Bell in the case of *The State* v. *Richmond,* 6 Foster 237 : " There is in our books great looseness and no little confusion in the use of the terms *void* and *voidable,* growing, perhaps, in some degree, out of the imperfection of our language. There are at least four kinds of defects which are included under these expressions ; while we have but two terms to express them all.

"I. Proceedings may be wholly void, without force or

1879
Special Term.

Ambler, Trustee
v.
Leach et al.

effect as to all persons and for all purposes, and incapable of being, or being made, otherwise. This is the broadest sense of the word.

"II. Things may be void as to some persons and for some purposes, and, as to them, incapable of being otherwise, which are yet valid as to other persons, and effectual for other purposes; as a deed executed by an idiot and by others capable of contracting, may be void as to the idiot yet binding as to the others; an instrument in the form of a deed, but without a seal, may be void as a conveyance, and yet binding for some other purposes.

" III. Things may be void as to all persons and for all purposes, or as to some persons and for some purposes, though not so as to others, until they are confirmed ; but though said to be void, they are not so in the broadest sense of that term, or even in its secondary sense, above given, because they have a capacity of being confirmed, and after such confirmation they are binding. For this kind of defect our language affords no distinctive term. They are strictly neither *void,* that is, mere nullities, nor *voidable,* because they do not require to be avoided, but until confirmed they are without validity. They are usually spoken of as *void,* and as usage is the only law of language, they are so called correctly. It is therefore always to be considered an open question, to be decided by the connection and otherwise, whether the term *void* is used in a given instance in the one or the other of these in some respects dissimilar senses.

" IV. Contracts and proceedings are properly called *voidable,* which are valid and effectual until they are avoided by some act. *Prima facie* they are valid, but they are subject to defects, of which some person has a right to take advantage, who may by proper proceedings for that purpose entirely defeat and destroy them. *Voidable* contracts are in general, perhaps always, like the last class referred to and called void, capable of confirmation by the party who has a right to avoid them.

1879
Special Term.

Ambler. Trustee
v.
Leach et al.

Matters which are properly *voidable* are very commonly spoken of as *void*, *Smith* v. *Saxon*, 6 Pick. 487. Technically and legally speaking they are improperly so called. But the word void is so often used by good writers, and even by legal writers, in the sense of invalid, ineffectual or not binding, that it can hardly be said that this is not a correct and legitimate use of the term. Our books are full of examples of the loose and inaccurate use of these words and many difficult questions have grown out of these circumstances. They are so common, that we think no strong inference is to be justly drawn from the unqualified use of these words, as to the particular kind or degree of invalidity meant, when the attention of the court is not clearly directed to that point."

I have cited thus largely from this opinion, because it is very important to bear in mind the loose and inaccurate use of these words *void* and *voidable* and similar words; for the reports of cases bearing on the subject under our consideration show as clearly as any other the vagueness and confusion with which these words are used. And hence the weight to be attached to these cases depends much more on the point which was before the court for decision, than upon the language merely used in rendering the decision. This language, in these cases especially, must be interpreted in view of the question before the court to be decided.

That we may more fully appreciate the distinction in the meaning of these words void and voidable, as stated by Judge Bell, we will cite some examples of each meaning of these words taken from the reports, and which are more closely connected with the point under discussion in this case, than those which have already been given by Judge Bell as illustrations.

All proceedings of a court which has no jurisdiction of the subject-matter on which it undertakes to act are *void* in the first sense of this word, as above given. Such proceedings are absolutely void. The want of legal authority can not be supplied. No assent of parties in such

1879
Special Term.
———————
Ambler, Trustee
v.
Leach et al.

a case can confer any jurisdiction. They are in the words of our definition *wholly void, without force or effect, as to all persons and for all purposes, and are incapable of being, or being made, otherwise.* See *Marshalsea Case,* 10 Co. 76; *Starr* v. *Trustees of Rochester,* 6 Wend. 564; *Carlsle* v. *Weston,* 21 Pick. 535; *Pearce* v. *Atwood,* 12 Mass. 324; *Pritchard* v. *Atkison,* 3 N. H. 335.

As an example of the proceedings of a court being void in the the third sense of this word, as above explained, I may refer to the case where no process has been served on the defendant against whom proceedings are being had. The proceedings are not void in the first or broadest sense of this word. These proceedings are not necessarily mere nullities; nor are they voidable proceedings for they do not require to be avoided. They are usually called void, and perhaps properly so, as we have no other word in our language which can be applied to them except void and voidable, and it is obvious that voidable cannot be properly applied to them. Yet they are not necessarily nullities, or void absolutely and incurably, because the authorities all agree that they may be confirmed. And they are confirmed by the defendant appearing in the case and submitting his case to the judgment of the court, or by pleading in bar to the action. If not confirmed by the defendant, they are void in the broadest sense of the word, that is, mere nullities. See *Harris* v. *Hardman,* 14 How. 334; *Wilson et al.* v. *Bank of Mt. Pleasant,* 6 Leigh 570; *Bigelow* v. *Stevens,* 11 Johns. 41; *Moore* v. *Starks,* 1 Ohio St. (N. S.) 369; *Van Wormer* v. *Mayor of Albany,* 15 Wend. 262; *Piquit* v. *Swan,* 5 Mass. 43; *Hoxie* v. *Wright,* 2 Vt. 263; *Railroad* v. *Archer,* 6 Paige Ch. 83.

As an example of proceedings which are void in the second sense of this word, as above explained, I may refer to the case, where in a proceeding against two defendants one is served with process and the other is not, and never confirms the proceedings by appearance or pleas. The judgment rendered against the defendants is

1879
Special Term.

Ambler, Trustee
v.
Leach et al.

void, as to the defendant who was not served with process and did not appear, but is valid as to the other defendant on whom process was served. This was what was really decided in *Hall et al.* v. *Bowyer et al.*, 18 Gratt. 365, as against the defendant not served with the process the judgment was a mere nullity, everywhere and at all times, in a collateral as well as a direct proceeding; but the defendant, who was served with process, cannot in a collateral proceeding question the validity of the judgment against both the defendants. This is all that Judge Joynes really meant to say on page 381, though it has been interpreted by the appellant's counsel as though it laid down a very different proposition, that a decree against a defendant without service of process or appearance cannot be assailed by third persons collaterally.

Lastly as an example of proceedings of a court which are properly speaking voidable, we may refer to the cases where the process is defective, or is not properly returned. They are frequently treated as valid and effectual, until they are avoided by some act of the defendant. They are *prima facie* valid, but they are subject to defects, and the defendant may by proper proceedings defeat and desstroy them. But such proceedings must be taken by the defendant, or in these cases the judgment pronounced will be valid. These proceedings must for some such defects be taken advantage of at the earliest opportunity, otherwise he waives his objection to the process, or return, for such defects. On the other hand there may be such a substantial defect in the process, that though the defendant does not then take advantage of it, yet if the judgment is by default, he may take advantage of such defect shown in the Appellate Court, on writ of error; but still in such case the process is not absolutely void, but only voidable; for if the the defendant does not take advantage of it by a writ of error, the judgment is valid and binding to all intents and purposes. Examples of voidable proceedings will appear in the progress of this opinion. These voidable proceedings are very commonly spoken of

1879.
Special Term.

Ambler, Trustee
v.
Leach *et al.*

as void. This word being used merely as meaning *invalid*, *ineffectual*, or not binding, and not in its proper legal signification. And we must therefore carefully consider, in the cases to which we will refer, the particular point before the court, before we undertake to attach to the word void, or the use of other unqualified words of similar import, the meaning of mere nullity, they frequently meaning invalidity, the particular kind and degree of which must be frequently ascertained by a careful examination of the point before the court for decision.

Having thus guarded ourselves against a careless examination of the cases, we will proceed to consider those we have found which are most pertinent to the subject of enquiry before us. In some of the States their constitutions or laws require that process shall be signed by the clerk of the court, and sealed with the seal of the court, and as the sealing as well as signing is clearly intended for the like purpose, of authenticating the process, the decision as to the effect of omitting to attach the seal of the court I regard as bearing directly on the question under discussion in this case. In Maine, where the process has to be under the seal of the court, it was decided that a writ returnable to the Supreme Judicial Court, which ought to have had the seal of that court attached to it, but did not have, was to be quashed on motion of the defendant, though made at a term long subsequent to the term at which the writ was returnable. The court say : " Upon the whole we regard the seal as a matter of substance, and the process, being an original writ, not amendable. We regret that the defect was not pointed out at an earlier stage of the proceedings ; but we are not satisfied that it is now too late to take the objection. We do not abate the proceedings so much for the sake of the defendants, as because the plaintiff has departed from a substantial requirement of law of a public nature, in bringing his action." It is obvious that the court did not regard this process as absolutely null and void, but as a voidable process; but the defect being a substantial

one, the defendant was not confined to the term at
which process was returnable to make his motion to
quash this process, but was allowed to do so long after-
wards.  Still if he had permitted a judgment to be en-
tered by default, the court would doubtless have held
this judgment valid.  All they did decide was, that at
any time pending the case he might avoid this process;
but unless avoided, it was good.

That it was not a mere nullity and absolutely void is
shown by the case of *Sawyer* v. *Baker*, 3 Greenl. (8 Me.)
29, where the court held that an execution issued with-
out the seal of the court, which the law required, was
not absolutely void, but might be afterwards amended.
And this decision is approved in the case of *Bailey* v.
*Smith*, 3 Farfield, (12 Me.) 196.  So in Massachusetts.
Upon a plea in abatement to a writ, that the seal of the
court was not attached, the court held the plea good and
refused to permit the writ to be amended by attaching
the seal.  *Hall* v. *Jones*, 9 Pick. 446.  But in New York
in the case of *Pepron, et al.*, v. *Jenkins*, Coleman & Caine's
cases 60, on a motion to quash a writ, because not signed
by the clerk, the court permitted the writ to be amended
by the clerk's then signing it.  Both these cases evident-
ly treat the writ as not void, but as voidable only.  And
in the *People* v. *Dunning*, 1 Wend. 16, the court ex-
pressly decide that an execution, to which the seal of
the court was not attached as the law requires, was not
void or a nullity, but only voidable, and the sureties of a
sheriff were held liable for money collected under such an
execution.  In the case of *Slayton* v. *Newcomer*, 1 Eng.
(Ark.) 451, there was a judgment by default on a writ
to which the seal of the court was not attached.  Upon
writ of error this judgment was reversed.  We could not
from this infer that the writ was a mere nullity, but
rather the reverse, that it was voidable, and was avoided
by the defendants obtaining a writ of error.  But Old-
ham, Judge, in delivering the opinion of the court, used
very strong language to show that the writ was a mere

nullity. He says, "this writ totally fails to confer any jurisdiction over the person of the appellant. The writ being unsealed is a mere nullity, and as such imposes no legal obligation upon the appellant to appear and defend against the action. The judgment by default is therefore erroneous and ought to be reversed." This language is so specific that it is obvious that the court intended to hold that a writ to which the seal of the court was not attached, was an absolute nullity, unless confirmed by the defendant's appearance. And that a judgment by default based on it would also be null and void, even had it not been reversed by the Appellante Court.

In *Smith* v. *Affunassieffe*, 2 Rich. (St.) 334, the court held that no judgment for costs could be entered in a suit, in which the writ was neither signed by the clerk nor had the seal of the court attached, but which was issued by the plaintiff's attorney and service of it accepted by the defendant's attorney, the process never having gone into the hands of the sheriff and no declaration filed. The court say: "It is essential to a writ that it have the seal of the court and be signed by the clerk. The defendant has not waived the insufficiency of the, writ by any subsequent act, so as to make him a party in court. There has been no action commenced and prosecuted between the parties, so as to entitle either to costs." The judgment for costs entered below in favor of the defendant on his motion to enter up judgment of *non pros.* was reversed. We cannot tell from this opinion, whether, if judgment for the plaintiff by default of the defendant on such a writ had been rendered, it would have been regarded as a nullity, or not. The court may have regarded such a writ as a mere nullity and have held a judgment on it without reversal as void. But it may have held only that it was liable to reversal, but not otherwise a nullity. This is all the case actually decides.

In *Foss* v. *Issett*, 4 Iowa 77, the court below refused to quash an attachment because the seal of the court was not attached to it, when the plaintiff asked leave to amend

1879
Special Term.

Ambler, Trustee
v.
Leach et al.

it by attaching then the seal, which the court below permitted. This was reversed by the Court of Appeals. But we cannot infer from this that the court would have regarded this writ and judgment based on it as mere nullities, had the defendant made no motion to quash it, though the judge delivering the opinion the court uses this strong language : " Without this seal it is no more for the purpose of a writ than blank paper. Could it be amended ? Not at all ; for there is nothing to amend. It lacks the essential ingredients of a writ and is not amendable." On the other hand in *Lovell et ux.* v. *Sabin,* 15 N. H. 29, the court held that, where both the signature of the clerk and the seal of the court had been cut from an old writ and attached to the writ by which the proceeding before the court was instituted, this would not render the writ void, but only voidable on a motion to quash seasonably made.

In *Parson* v. *Swett,* 32 New Hampshire 88, the court decided that, though the Constitution of New Hampshire expressly provides that "all writs shall bear the *teste* of the chief justice of the court," yet a writ not bearing this *teste* was not void, but only voidable by motion to quash made at the proper time in the progress of the suit. The court say : " The Constitution of this State, article 87, provides that all writs issuing out of the clerk's office in any court of law, shall be in the name of the State of New Hampshire, shall be under the seal of the court whence they issue, and bear *teste* of the chief, first or senior justice of the court, and shall be signed by the clerk of said court, yet a writ which issues without the proper *teste* is not in terms declared by the Constitution to be void, and we think it is not to be held so by construction. In the same article of the Constitution writs are required to be signed by the clerk ; but a writ is not void because it wants the signature of the clerk ; and the objection will be overruled, if not seasonably made. *Lovell* v. *Sabin,* 15 N. H. 37. In Massachusetts, upon the construction of a similar pro-

1879
Special Term.

Ambler, Trustee
v.
Leach et al.

vision of their Constitution, it has been decided that the want of a proper *teste* is mere matter of form, and must be taken advantage of by seasonable objection; otherwise it will be held to be waived. *Ripley* v. *Warren*, 2 Pick. 592. In this case the want of a proper *teste* did not make the writ void. If a motion to quash had been seasonably made, the writ might have been amended; for it was not void, and the court had jurisdiction. It was so decided in *Reynolds* v. *Donnell*, not reported.• The ordinary process of the court never in fact bears the actual signature of the chief justice, but his name is printed into the blank writs before they are delivered out of the clerk's office. The *teste* of a writ is therefore in practice a mere matter of form."

Yet in *Hutchins* v. *Edson*, 1 N. H. 139, a sheriff was held not liable for the escape of a prisoner, whom he held in custody, because the execution under which he held him was not under seal, and the court say : "A writ not under seal is not process warranted by law. The Constitution in our opinion has rendered a seal essential to the validity of all our writs; and no officer can justify anything done under a writ of execution not under seal. It is no better warrant for arrest than a piece of blank paper." Commenting on this case the court in *Parson* v. *Swett*, 32 N. H. 89, say : "The general language used in that case might tend to the conclusion that writs of *mesne*, as well as final, process were *void*, unless under the seal of the court. It is obvious however, that there is an important distinction between the two kinds of writs, because to a writ of final process the defendant has no opportunity to object, by plea or motion that it wants a seal or other constitutional requisite. It may perhaps be found, when a case shall arise which presents the question, that the doctrine of *Hutchins and Edson* ought not to be extended beyond the point expressly decided. *Foote* v. *Knowles*, 4 Metc. 586 ; *Brewer* v. *Libbey*, 13 Metc. 175 ; *People* v. *Dunning*, 1 Wend. 17 ; *Jackson* v. *Brown*, 4 Cow. 550."

1879
Special Term.

Ambler, Trustee
v.
Leach et al.

In *John Kellogg ex parte,* 6 Vt. 509 : It was decided that a judgment was not void, because the writ had been served by one not authorized to serve it legally, the defendant having appeared in the case. The court say: "That a judgment is never void when the court has jurisdiction of the subject-matter and the parties, especially if the defendant has had *actual* and timely *notice.*" The contrary of this was held in *Cave* v. *Humphrey,* where the judgment was by default. In the case of *Huntley* v. *Harry et al.,* 37 Vt. 167, it was decided that the writ not being signed by the clerk did not render the judgment void. In that case the defendant appeared and pleaded, but the court say: "If the process be irregular in point of form, or in direction, service or return, the defendant may move to quash it; but this he should do as early as possible. Swift in his Digest, page 610, expressly mentions as one ground of abatement merely, that the writ is not signed by proper authority, classing it with other defects of form."

There has been in the State of Arkansas a very large number of decisions as to the effect upon a judgment of the writ being defective in almost all sorts of ways. The decisions at first were quite strong, or the language used in them strong, to indicate that for many of these defects the judgments would be void. These cases were all reviewed however in *Mitchell* v. *Conley,* 8 Eng. 414, and the court on full review of them then held an original summons not running in the name of the State is not void, but amendable, and may be amended after plea in abatement filed. In *Rodd, surv.* v. *Thompson & Barnes,* 22 Ark. 363. the court held a writ of summons is not void for want of the official seal of the clerk. It is voidable only and may be amended on application to the court ; but if no application to amend has been made, the defect is ground for a reversal of judgment by default. The court say : " It has been the practice of this court to reverse judgments by default in cases where the summons were without the official seal of the clerk, and such writs

1879
Special Term.

Ambler, Trustee
v.
Leach et al.

Syllabus 1.

were treated as void, But in *Mitchell* v. *Conley*, 13 Ark. 418, the court upon a review of its previous decisions held that they were not void for such defects, but voidable, and the court below possessed the power to amend them on application. Here no application was made to amend ; and the defect in the writ is cause of reversal."

The authorities we have cited show that the decided weight of authority is against holding a writ absolutely void, because not signed by the clerk, or not having the seal of the court attached to it, or not being properly attached, or for not running in the name of the State, even where these things, or any of them, are required in the Constitution ; but such defects in a writ render it only voidable. In some States it is held that these things, or most of them, are so much a matter of form, that no advantage can be taken of them except by a plea in abatement, or by a motion to quash made at the proper time. Others hold that while none of these defects render a writ void, or the judgment based on it a nullity; yet they, or some of them, are such defects of substance that the writ can be avoided by motions to quash, though not made promptly, and where on such a defective writ, at least where some of these defects exist, a judgment by default is obtained against the defendant, it will be reversed on writ of error. But no decision, which I have been able to find, holds in a collateral proceeding that such a judgment is a nullity. It is true, as we have seen, that some of the judges use very strong language, from which we might infer, that in their opinion a judgment by default based on a writ in which some of these defects existed was an absolute nullity ; but we are liable to mistake their views, as in none of the cases, we have seen, were they called upon to decide more than that the judgment might be reversed, or the writ quashed on motion in the same suit ; and it is obvious that this might properly be done, though the judgment was not a mere nullity.

I will now examine the decisions in Virginia and in

1879
Special Term.
Ambler, Trustee
v.
Leach et al.

this State, and see whether they are in accord with the current of authorities elsewhere. The Constitution of Virginia of 1851 provides, that " writs shall run in the name of the Commonwealth of Virginia, and be attested by the clerks of the several courts." Article VI. §24. In the Constitution of West Virginia in force when the judg-. ment alleged to be void in this case was rendered, provides simply " that writs shall run in the name of the State of West Virginia." Article I. §5 of Constitution of 1863. In the case of *Hickham* v. *Larkey*, 6 Gratt. 210, the original and *alias capias* were regularly issued and returned " not found," and then a *pluries capias*, which like the writ in the case under our consideration was blank as to its date and not signed by the clerk, was issued and returned "not found," and then the plaintiff proceeded against the defendant by proclamation, and the case was then matured, and there was an office judgment and writ of enquiry. The defendant, when the case was called for trial, by his counsel moved the court for leave to appear and move the court to quash the *pluries capias*, the return thereof and the subsequent proceedings, without entering his appearance to the action. The court refused to permit him to appear and make this motion, unless he appeared and gave bail, if ruled so to do by the court, and the defendant excepted to this action of the court. The writ of enquiry was then executed, and judgment rendered against the defendant. On writ of error the Court of Appeals held that the defendant had a right to make this motion, and object that the case was not regularly matured for trial, and the court a right to look at the process as a part of the record. That the paper, which the court had treated as a " *pluries capias*," though in other respects formal, was without date and without signature, and did not as the Constitution required, " bear teste in the name of the clerk." The opinion then proceeds : " The said paper was therefore wholly null and void as process; and the order directing procla--

1879
Special ·Term.

Ambler, Trustee
v.
Leach et al.

mation to issue, and all the subsequent proceedings were without warrant and illegal." The judgment of the circuit court was reversed and the case remanded.

If we were to look at this decision alone, we would conclude that the court regarded this "*pluries capias*" as voidable, and being avoided by the defendant's motion at a proper time to quash the same, it ought to have been quashed, as the Court of Appeals did quash it. But the language used by Daniel, Judge, in delivering the opinion of the court, that it was "wholly null and void as process" might lead perhaps to the inference, that he would have regarded it as null and void, and the judgment based on it as null and void, even if the defendant had not appeared and moved to quash the writ. But he does not so say, and to have said so would obviously have been to announce a mere *obiter dictum*, and in view of what has abundantly appeared in this opinion, that the words "null and void" are often used even by good writers for "voidable," I can not but regard them in this case as so used, the meaning of Judge Daniel being, that in that case this writ of "*pluries capias*" must be held to be "wholly null and void." The decision and opinion would then be in full accord with the current of authorities.

In the first case decided by the Court of Appeals of West' Virginia, *Gorman* v. *Steed*, 1 W. Va. 1, a writ which ran in the name of the *Commonwealth* of West Virginia instead of the State of West' Virginia, as the Constitution required, ought on the motion of the defendant at the first term to have been quashed; and ˅the court also held, that on said motion the writ ought also to have been quashed, because it was dated the 23d day of October, 1863, when it was issued according to the proof on June 23, 1863, and was on its face returnable to the first Monday in July; 1863, the court holding that this confusion of dates was calculated to delude the defendant as to the day, when he should appear and answer the same, the writ being executed on June 25, 1863.

1879
Special Term.

Ambler, Trustee
v.
Leach et al.

The inference to be drawn from this decision is obviously, that this writ, because it ran in the name of the Commonwealth instead of the State, and because of the absurdity of its date, deing dated three months after it was served, was "voidable," and as such on the defendant's motion to quash it ought to have been avoided. There is nothing in the opinion of the Court from which we can infer that this writ was regarded as void, so that if no motion had been made to quash it, a judgment rendered on it would have been regarded as a nullity.

In *Beard* v. *O'Riley*, 14 W. Va. 55, a writ was quashed on motion of the defendant made at the proper time, because it did not run in the name of the State. This too was based on this writ being regarded as voidable, and not absolutely void, though the court does not in terms state how they regarded it in this respect. It is somewhat remarkable, that not only the first but the second case also decided by the Court of Appeals of West Virginia was on the question of the validity of a writ irregular on its face. The case was *Pendleton* v. *Smith* 1 W. Va. 16. The writ in that case was signed by a deputy clerk, who signed to the writ his own name, adding thereto "deputy clerk." The Court held that as the Constitution of Virginia, in operation when this writ issued and judgment in the case was rendered, required expressly that writs should be "attested by the clerks of the several courts," this writ was not issued in compliance with the Constitution, it ought to have been quashed on motion of the defendant at the proper time, as it was fatally defective. This decision is in accord with the current of authorities unless we regard such a writ as altogether valid ; and it was so held in *Bush* v. *Circleville*, 15 Ohio 297. But it is unimportant now whether it should have been held voidable, as the court held it, or valid. Judge Brown in this case thought it valid, but whether this and the Ohio decisions were right or wrong, such a writ would doubtless be held valid now, as our Constitution does not now require "writs to be attested by the

1879
Special Term.
————————
Ambler, Trustee
v.
Leach et al.

clerks of the several courts." I concur with the general weight of authority in cases of this character and the Virginia and West Virginia decisions are not inconsistent with them.

In this case the defendants in the common law suit had a summons regularly served on them by the sheriff, which on its face showed it came from the clerk's office, though not signed by the clerk. It was served on the 2d day of August, 1869, and required them to appear at a specified time to answer the plaintiff's demand. It is true the summons was not dated, but the law required that a writ should be returned in not exceeding ninety days. The defendants knew therefore that this writ had been issued at sometime within the preceding ninety days, and could not therefore have supposed it was issued in some preceding year, as has been suggested, and must therefore have known at what specific time they were required to appear and answer. They also knew in what court to answer from the face of the writ, and at what particular time to answer. It does seem to me therefore that such a writ ought not to be regarded as an absolute nullity. It was no doubt very defective and might have been properly quashed; but as it really gave with reasonable certainty all the information to the defendants that a regular and perfect writ would have done, it cannot justly be regarded as a nullity.

Syllabus 2.

As a void judgment is a cloud upon the title of the real estate of the defendant, or his trustee, and is therefore calculated to produce an injury, the defendant, or his trustee, may as a general rule maintain a bill to have such cloud removed. The case of *Johnson et al.* v. *Johnson et al.*, 30 Ill. 215, is a direct authority in favor of the jurisdiction of a court of equity to entertain such a bill. But in this case the judgment we have seen is not void, and therefore unless we can find other ground for equitable relief, the bill was properly dismissed.

Syllabus 3.

The bill claims, as another ground of equitable relief that the return by the sheriff of the *fi. fa.* issued on the

judgment, without levying the same, by the direction of the plaintiff without the knowledge or consent of the surety bound by this judgment, operated a release of the surety. It is well settled that when the property of the principal is levied upon by the sheriff, and the lien of the execution is relinquished by the creditor without the consent of the surety, it will discharge the surety to the extent commensurate with resulting loss, but it will not discharge the surety entirely, or exonerate him beyond the actual loss sustained. See *Ward* v. *Vass* and White and Tudor's Leading Cases in Equity notes to *Rees* v. *Barrington*, pages 1901 and 1902 of vol. 2, fourth American from fourth London edition. But a surety is not discharged, or exonerated to any extent, by the simple withdrawal of the execution against the principal, after it has been placed in the hands of the sheriff but before actual levy, though the principal may have had personal property on which the execution might have been levied. See *Hunter* v. *Jett*, 4 Rand. 104; *McKenney* v. *Walter*, 1 Leigh 434; *Alcock* v. *Hill*, 4 Leigh 622; *Humphrey* v. *Hill*, 6 Gratt. 509, and numerous other authorities referred to in White and Tudor's Leading Cases in Equity, vol. 2, p. 1900 of same edition. It is clear therefore that the return of the execution in this case to the office by the sheriff under the direction of the creditor's attorney furnishes no ground for equitable relief in this case.

The only remaining ground for equitable relief is, that the bill charges that this judgment or rather debt was fully paid and satisfied, before the writ was returned by the sheriff to the office by direction of the attorney of the creditors, and the prayer based thereon that the court will declare that this judgment has been paid and satisfied. The deed of trust conveyed to Ambler all the property, real and personal, of the grantor, Blackford, expressly including all his choses in action, and authorizes him to collect the same by legal steps, or by compromise and settlement, as he deemed best, and the grantor concludes this deed by covenanting and agreeing "to make,

1879
Special Term.

Ambler, Trustee
v.
Leach *et al.*

Syllabus 4.

1879
Special Term.

Ambler, Trustee
v.
Leach et al.

execute and deliver all necessary papers and writings, to assign to, and place said Ambler in full and complete possession of, all said property, and that he will not make, do, commit or suffer to be done any act whereby to release or discharge any debt or debts or conceal any estate or effects hereinbefore assigned or intended so to be, *and will not do any act to hinder or delay said trustee in the execution of this trust.*

It has been expressly decided by this court in *Reinhard, Meyer & Co.* v. *Baker et al.*, 13 W. Va. 805, that either the plaintiff or defendant in an execution may make a motion to quash an execution after the return day thereof, and after it has been actually returned to the office. Under our law a *fi. fa.*, whether levied or not levied, is a lien on choses in action and other property to a certain extent, and this lien continues after the return day; and the *fi. fa.* in this case created such a lien, though it was returned to the clerk's office unlevied by the direction of the plaintiff's attorney; and according to the decision above recited it might have been quashed on a motion made by the surety, J. G. Blackford, one of the defendants, or after the execution of this deed of trust Ambler, the trustee, could have made the motion in Blackford's name, basing it on the ground that the execution had been paid, as alleged in his bill, or on the ground that the judgment was satisfied before the execution issued. there is no reason to believe from any thing alleged in the bill that Blackford, the defendant in this execution, would have attempted to have controlled and dismissed such a motion ; and if he had, the court in view of his express stipulation in the deed of trust that "he would do no act to hinder or delay said trustee in the execution of his trust" would have prevented his interference. This conclusion is fairly inferable from the decision above quoted, that the equitable owner of a judgment may make such a motion in the name of the plaintiff on the record, and the court will not permit such plaintiff to control such execution or motion. If the court would thus recog-

1879
Special Term,

Ambler, Trustee
v.
Leach et al.

nize the equitable right of the party making such motion, it would in such a case as this recognize the equitable right of Ambler, the trustee, to make the motion to determine whether as trustee this debt was due, or had been paid ; and the defendant, Blackford, would not have been permitted, in violation of his express agreement not to hinder the trustee in the performance of his duties, to have dismissed such motion. Such a motion would have settled satisfactorily and by a very simple common law proceeding the question whether this debt was paid, and therefore a court of equity ought not to take jurisdiction of the question whether this judgment has been paid or not.

It may be said that the validity of the judgment itself might have been thus tried at law ; and perhaps the court below might have been justified in refusing to entertain the bill on that ground only. But as the object of the bill is to remove a cloud from the title to the land, which prevents the community at large from bidding for the land, the mere quashing of this execution would perhaps have been a less satisfactory removal of such cloud, than the judgment of the court in this case that this judgment was null and void. But we are indisposed to put our refusal to sustain this bill on the special grounds above specified, and prefer deciding on its merits the validity or invalidity of this judgment. Independently of the special grounds arising out of the peculiar provisions in this deed of trust and facts in this case, a trustee ought not in general to be entertained in a court of equity, to have determined the question whether a particular debt secured by the deed of trust, whether evidenced by a judgment prior to the deed or not, has been paid in whole or in part. If he could as a matter of right institute such a suit, and the court ought to entertain it, he would of course institute, severally, many such suits, one against each judgment creditor, or one against each open account creditor. And thus a multiplicity of suits might

1879
Special Term

Ambler,Trustee
v.
Leach *et al.*

be brought, which it is the special object of the court to avoid by allowing what is known as a creditor's bill. If the trustee is embarrassed by not being able satisfactorily to determine the amount still due on debts he is bound to pay, or by not knowing the amount due on judgments which are prior liens on the land conveyed to him, he is allowed to bring a creditor's bill to determine all these prior liens, and the amount due on them, and also the amount due on each of the debts he is required to pay by the deed of trust; and thus in one suit all difficulties are settled, a suit too in which every party interested has a right to see that all these questions are justly settled. It would require a very peculiar and special case to justify the court in permitting a trustee to depart from this well established and equitable mode of proceeding, and to permit him to have tried in a court of equity the question, what amount was due on a particular judgment which was a prior lien, or a particular debt secured by the deed of trust, making such creditor only a defendant.

This case certainly does not present any equitable circumstances, justifying a departure from the general rule, but the contrary. There may, for anything this record shows, be many judgments against the grantor in this deed of trust, the amounts still due on which may be the subject of controversy; and if this suit was entertained on this ground, a like suit against each judgment-creditor would have to be entertained; and for a similar reason a like suit would have to be entertained against each open account creditor entitled to participate in the property conveyed by the trust. All the creditors of the grantor are so secured, whether they have judgments or not; and there is no specification of them. These creditors both by judgments and open accounts may be numerous, and this case is therefore one in which it would be clearly improper to permit the trustee to prosecute a suit to ascertain the amount due on one of these judgments or due to one of the creditors. If necessary he

may bring one suit to ascertain the liens on this property, and the amounts due to each creditor secured by the deed of trust; but such a suit as this the court ought not to entertain.

1879<br>Special Term.<br>Ambler,Trustee<br>v.<br>Leach *et al.*

For these reasons the decree of the circuit court of October 28, 1878, sustaining the defendant's demurrer and dismissing the plaintiff's bill at his costs, must be affirmed; and the appellees must recover of the appellant their costs in this Court expended and $30.00 damages. In adjudging in this case that the appellant must pay the costs in this Court and $30.00 damages, it must be understood, that we do not thereby mean to adjudge that these costs and damages are to be paid by the appellant out of his own funds, and not out of the funds in his hands as trustee. It is very probable that in settling his account as trustee these costs and damages should be allowed him as a proper charge against the trust fund. Whether it should be allowed or not we cannot determine properly in this case, as it is not a point involved in this suit, and must depend on circumstances, which are not disclosed and could not properly be disclosed in this cause.

JUDGES HAYMOND AND MOORE CONCURRED.

DECREE AFFIRMED.