## 𝔚𝔥𝔢𝔢𝔩𝔦𝔫𝔤.

### WILLIAM K. PENDLETON vs. EDWARD SMITH.

#### January Term, 1864.

1. An attachment, as against a non-resident, may be issued in one county and levied in another by the sheriff thereof, when there are effects or estate in the latter; and a valid lien may be acquired thereby.

2. It is not error for the court in which a suit and attachment is originally brought, to permit a subsequent attaching creditor, whose attachment may have been issued in another county, but levied in the county where the effects or property of the debtor are, to appear by petition and move to quash the preceding attachment for good grounds.

3. It is not necessary in an affidavit for an attachment against a non resident, to show *how* the party is such.

4. All writs, process and attachments, must be attested or signed by the clerk of the court from which they emanate, and not by his deputy; or the deputy must sign his name for him.

On the 9th day of September, 1861, *William K. Pendleton* brought an action of debt in the county court of *Brooke*, to recover from *Joseph H. Pendleton* and *Joseph W. Pendleton*, two thousand dollars; on the same day he caused an attachment to issue from the same office, under the 1 sec. of chap. 151 of the Code of Virginia (1860), which was signed by "S. G. Naylor, deputy clerk." The sheriff of *Brooke* county returned the attachment with the endorsement, that he levied on the 18th day of September, 1861, on a tract of land containing twelve acres, situated on *Buffalo creek*, and also served a copy on a garnishee. An order of publication was had against the defendants, as non residents.

At the November Term, 1862, of the county court of *Brooke*, one *Edward Smith* applied by petition, to the court, to be allowed to defend the said attachment, stating that, on or about the 25th day of April, 1862, he sued out of the clerk's office of the circuit court of *Ohio* county, an attachment against the estate of *Joseph H. Pendleton*, to enforce

the recovery of the sum of thirteen hundred and sixty-six dollars and eighty cents, with interest and costs, and that the same was directed to the sheriff of *Brooke* county; which said attachment was duly served by levying the same on a certain tract of land lying on *Buffalo creek*, in said county of *Brooke*, containing about twelve acres more or less, commonly known as the "woolen factory property." The said attachment was returned with the endorsement of the levy aforesaid to the clerk's office of the circuit court of *Ohio* county. *Smith* therefore claimed, that by reason of his lien on the said land, created by his attachment, he should, under the 25th section of chapter 151 of the Code, 1860, be admitted to defend against the said attachment of *William K. Pendleton*, likewise levied on the said twelve acres of land, alleging that the same was issued without sufficient cause, was improvidently granted, informal, null and void, and should be dismissed. To the filing of this petition, *Pendleton* by his attorney objected, but the court allowed the same to be entered of record, upon *Smith's* giving bond and security for fifty dollars, as surety for costs; which was accordingly done.

On the same day of the term, *Smith*, by his attorney, moved to quash and abate the attachment issued in the cause of *William K. Pendleton* vs. *Joseph H. Pendleton* and *Joseph W. Pendleton*, which motion the court sustained and gave judgment accordingly. To this ruling *William K. Pendleton* excepted, and tendered his bill, which was signed and enrolled. The court allowed *Pendleton* to take judgment on his action. He then applied to the Judge of the circuit court of *Brooke* for a supersedeas, which was allowed, to the judgment of the county court on the attachment, assigning as error, that the court ought not to have allowed the said *Smith* to file his said petition, or to appear in the cause by virtue thereof; because the petition showed that *Smith* claimed under a process, and order of attachment endorsed thereon, issued from the clerk's office of the circuit court of *Ohio* county, contrary to the first section of chapter 151, and the third clause of

the first section of chapter 169 of the Code of Virginia, 1860. And that the court erred in quashing said attachment, because it was in strict conformity to law.

The circuit court on the hearing of the supersedeas, at its November Term, 1863, affirmed the judgment of the county court and gave judgment to *Smith* the interpleader for costs.

*Pendleton* then applied to this court for a supersedeas which was granted.

*O. W. Langfitt*, for the Plaintiff in error.

In support of the first assignment of error, he insisted first:

That a process of attachment issued from the courts of *Ohio* county, cannot be directed to *Brooke* county, and there levied so as to constitute a lien on real estate. Code (1860) page 705, § 1, clause 3; page 645 § 1; page 647, § 7; 648, § 12; 651, § 25. For the suit must be brought in the county where the property attached is. Code (1860) page 705 § 1, and *O'Brien* vs. *Stephens*, 11 Grat. 610, et seq.

Secondly. That the doctrine *latitat*, and *testatum capias*, is not either available or obligatory in Virginia. For the only right *now* to process from the several courts is statutory; and only as therein prescribed, either for chancery or law: and the statute does not authorize process to be issued in *Ohio* county, where the sole defendant does not reside, and directed to *Brooke* county, where it appears on the face of the proceedings that the defendant does not reside. Code (1860) page 705, § 1, 706 § 2; 2 Chit. Bl. 215 *et seq.;* 1 Tidd's Prac. 148, 153–4; 2 Tuc. Com. 237; 1 Rob. Prac. 175; 2 Tuc. Com. 231, 233.

But supposing it to be proper to allow the petition to be filed, then it was error to proceed forthwith, and without any proof whatever, or the offer of any, of the facts alleged in the petition, to quash the plaintiff's attachment. There may have been no suit in *Ohio* county, as alleged in the petition; or if a suit was there, the proceedings may have been so irregular as to be worthless and void. In short the

petition does not prove itself, when the petition seeks the benefit of the facts alleged. 1 Greenl. Ev. § 74, (note 3.)

In support of the second assignment of error, he insisted that, the attachment should not have been quashed, because it was not only in the usual, but also in due form of law. There is no objection to it, except to the form, or failure of the clerk of *Brooke* county court to sign it. When the requisites of the law as touching a writ, are complied with, the writ is legally sufficient; and the court cannot require more; and as touching the point in dispute relative to the writ of attachment in this case, it will be perceived the *test* has every requisite required by either the constitution or statute. But it is signed "*S. G. Naylor, Dep't Clerk*," and not, as the defendant insists, *Joseph R. Naylor, Clerk*, or *Jos. R. Naylor*, by *S. G. Naylor, Dep'y Clerk*. The constitution of 29th June, 1776, prescribes that all writs shall bear test by the clerk of the courts. 1 R. C. 37, § 18; and the constitution of 1851 contains the same provision. · Code (1860), page 54, § 24. A writ therefore being right in other respects, is good, if it has 'a proper *test;* and there being no other objection to this writ than that made to the *test*, this writ is good if the test is. The test is good. At the time our first constitution was made we had not separated from Great Britain. Her laws and practice were our laws and practice. The words, therefore, used in the formation of a proper test, and that have at all times been in use in Virginia, must be understood to be used in the same sense in which they were used at Westminster.

What is a proper test? It is the concluding clause of a writ, commencing with "Witness," as for instance: *Witness, J. R. Naylor, clerk of our said court*, &c. 2 Bouv. L. Dic., Test, page 582; 2 Chit. Bl. 210; Stephens' Pl. 19, 20.

It never was law, nor was it practice, after adding such a test, to again add the name of the clerk, or other officer by whom the test is made; nor by any officer in any official capacity, although it might and was often supersigned by the Filacer. 1 Bouv. L. Dict. 524, *Filacer*. 7 Went. Pl. 399; 10 Went. Pl. 280 and 474. This writ bears test by the clerk,

but is not signed by him; and according to these last authorities such signing is not necessary. But it is signed by his deputy clerk. Surely since it is a good writ without the signing of the clerk, it cannot be rendered vicious by it being signed by the deputy. But a clerk can do anything by his deputy that he himself can do. Code (1860) 696, § 8. The deputy clerk is nowhere required to sign the name of his principal; but a deputy sheriff is always required to sign the name of his principal, as well as that of his own. Code (1860), 284, § 27. To require such a signing by deputy sheriffs, and say nothing about any such signing by deputy clerks in the same law, is to say that it is not necessary, and the law is not intended to require it. If the law does not require it, the courts should not.

*N. Richardson*, for the defendant in error.

HARRISON, J., delivered the opinion of the court.

This is a ·controversy between attaching creditors of *Joseph .H. Pendleton* and *Joseph W. Pendleton*, seeking to subject their estates to the payment of the debts mentioned in the proceedings.

On the 9th day of September, 1861, *William K. Pendleton* sued out of the clerk's office of *Brooke* county court, a summons against *Joseph H. Pendleton* and *Joseph W. Pendleton*, in debt, for two thousand dollars, made returnable to the ensuing October rules. On the summons the sheriff returned on the 30th day of September, 1861, that the defendants were not inhabitants of his bailiwick. On the same 9th day of September, 1861, affidavit was made in the manner prescribed by law,—that the defendants were indebted to the plaintiffs in the sum of $2000, with interest thereon from the 21st of September, 1850; that the said claim was just, that there was present cause of action therefor, that the defendant *Joseph H. Pendleton* was a non resident of this State, that the affiant believed he had estate or debts due him within the said county of *Brooke*. The affidavit was made before *J. R. Naylor*, clerk of the court. On the same 9th of September, 1861, an attachment was

made out in due form directed to the sheriff of said county, commanding him to attach the estate of the defendant *Joseph H. Pendleton*, of value sufficient to satisfy the plaintiff's debt, interest and costs, and make return at rules on the first Monday in October following. The attachment is in these words: "The Commonwealth of Virginia, to the sheriff of *Brooke* county, greeting: Whereas in an action of debt pending in the county court for *Brooke* county, to recover $2,000, wherein *William K. Pendleton* is plaintiff, and *Joseph H. Pendleton* and *Joseph W. Pendleton* are defendants, the said plaintiff has applied to the clerk of said court for an attachment against the money, goods and effects of the said *Joseph H. Pendleton*, one of said defendants, which may be in this commonwealth. And whereas, it appears by the affidavit of *N. W. White* that the said *Joseph H. Pendleton* is not an inhabitant of this Commonwealth, but has money, goods, property, and effects in the hands of *William Briggs*, and also certain real estate in said county of *Brooke*, on the waters of Buffalo creek, to wit: 11 8-160 acres of land commonly called the Woolen Factory Property, and it also appearing that the said plaintiff has present cause of action for said claim, and there is actually due the sum of $2,000, with interest from 21st September, 1850; these are therefore to require you to attach the money, estate and effects of said defendant in your bailiwick, of value sufficient to satisfy the said claim and interest, and the costs of said suit, and to secure the same, that it will be forthcoming and ready to abide the order of the court in said suit. And you will also summon the said garnishee to appear at the next term of the said court, to answer in the premises, and how you shall have executed this writ make known at the clerk's office of said court, at rules to be held therein, on the first Monday in October next, and have then there this writ. Witness, *J. R. Naylor*, clerk of our said court, at the court-house, the 9th day of September, 1861, and in the 82d year of the Commonwealth. *S. G. Naylor*, deputy clerk." It appears, by this process, that *J. R.* Naylor was the clerk of the court, and not *S. G.* Naylor

who subscribed his name to the attachment as deputy clerk. The attachment went into the hands of the sheriff of *Brooke* county and he endorsed a return thereon as follows: "Levied on the 18th of September, 1861, on a tract of land containing twelve acres, situated on Buffalo creek, and served a copy on *William Briggs.*" The return was made on the 18th of September 1861. Whilst this suit was pending in the county court, *Edward Smith* appeared in that court on the 25th of November, 1862, and filed his petition stating, that he had a lien upon the said land by virtue of an attachment sued out by him from the circuit court of *Ohio* county, on the 25th of April, 1862, directed to the sheriff of *Brooke* county, and that the same had been levied upon the said land by the sheriff. The court allowed the petition to be filed, and thereupon the said *Smith* moved the court to quash the attachment so issued at the instance of the said *William K. Pendleton;* which motion the court sustained, and rendered judgment quashing the attachment. *Pendleton* obtained a supersedeas from the circuit court of *Brooke* county to the judgment so rendered against him by the county court, and the cause came on for trial in the circuit court on the 11th of November, 1863, when the circuit court affirmed the judgment of the county court. To this judgment of the circuit court, *Pendleton* the plaintiff in error here, obtained a supersedeas from a judge of this court in vacation, and the question now to be determined is, did the circuit court err in its judgment affirming the judgment of the county court?

The plaintiff in error here, has assigned two causes of error in the proceedings:

First, that it was error in the county court allowing the defendant in error to appear and file his petition in that court.

Second, that the county court erred in quashing the attachment.

In the argument of the cause in this court, the attorney for the plaintiff in error, insisted that the petition filed by the defendant in error, showed that the attachment in his

favor had issued from the court of *Ohio* county and could not legally be directed to the sheriff of *Brooke* county, and therefore the defendant in error could not, by the service of that attachment by the sheriff of *Brooke* county, acquire a lien upon the said land.

The court is of the opinion that the 6th section of chap. 151 of the Code, 2d edition, page 647, authorizes attachments to be issued in the county in which the absent defendant has effects or estate; the locality of the property in the county and the non residence of the debtor give the court jurisdiction, and this court presuming that the said attachment properly issued from the court of *Ohio* county, was properly directed to and executed by the sheriff of *Brooke* county, whereby the defendant in error acquired a lien upon the said land, and that the county court properly admitted the petition to be filed, and that the defendant in error might contest the validity of the attachment by moving to quash the same, and that the court did not err in allowing the petition to be filed. This brings the court to the second error assigned. Did the county court err in quashing the attachment?

The attorney for the defendant in error, insists that the attachment ought to have been quashed for two reasons:

First, that the affidavit on which the attachment was founded, was not sufficient to warrant the attachment, that the affidavit should have shown *how* the defendant was a non resident; and he relied upon the act of the legislature passed the 26th of July, 1861.

Secondly, because the attachment had not been issued by *J. R. Naylor*, the clerk of the court, and could not properly have been issued by *S. G. Naylor*, whom we are to presume, was a deputy of the clerk.

The attorney for the plaintiff in error, in his argument, relied upon the 24th section, of the sixth article of the constitution of *Virginia*, which declares that "writs shall run in the name of the Commonwealth of *Virginia*, and be attested by the clerks of the several courts," and he insisted that the insertion by the deputy clerk of the name of *J. R.*

*Naylor*, clerk, in the summons where it is found, was such attestation by the clerk as the constitution contemplated.

This court is of opinion that although our statute authorizes clerks of courts to appoint deputies with the assent of the court, and declares that a deputy clerk may discharge any of the duties of a clerk; Code of 1860, page 696, sec. 8; yet whatever duties the deputy may discharge for his principal, must be in the name of the principal. Writs, summons' and other process, which are required to be issued by the clerk of a court, must be attested by the clerk in his own proper name: or it may be done by his deputy placing the name of his principal to the process: that the attestation of writs required by the constitution, means the subscribing the name of the clerk to the process. Such has been the usage of clerks from the foundation of the government.

This court is therefore of opinion the attachment was fatally defective for the want of the name of the clerk of the court, subscribed thereto by himself, or for him by his deputy, and that the county court did not err in its judgment quashing the attachment, and consequently there is no error in the judgment of the circuit court affirming that of the county court.

Judgment affirmed with costs and $30 damages.

BROWN, J., dissented.

The attestation clause of the writ of attachment, is in the precise form in use in the common law courts of *England* and *Virginia*, differing only in this: in the former the attestation is in the name of the Judge, in the latter in the name of the clerk. In this case it is *witnessed* by and in the name of the clerk—in his official character.

The writ was issued by the deputy clerk, who was authorized by law to issue it; and was signed by him in his official character as deputy clerk. It had, therefore, in my opinion, all the requisites of a valid writ; and the county

court erred in quashing it, and the circuit in affirming the judgment of the county court.

I think therefore, that both judgments should be reversed, with costs to the plaintiff in this court and both courts below.