# CHARLESTON.

## GOAD v. WALKER.

Submitted December 16, 1913.   Decided January 13, 1914.

1. ACKNOWLEDGMENT—*Sufficiency of Certificate.*
     An acknowledgment headed, ''Braxton County Court Clerk's Office, December 4th 1848,'' and signed ''John P. Byrne, C. B. C.'', sufficiently designates the official character of the officer certifying it. (p. 435).

2. ADVERSE POSSESSION—*Color of Title—Validity of Deed.*

A paper, purporting to convey land by proper description, though void as a conveyance for want of authority in the grantor, is admissible as evidence of color of title. (p. 435).

3. ACKNOWLEDGMENT—*Certificate—Identity of Person.*

An acknowledgment, certified in 1855, as well as at the present time, should in some manner identify the person acknowledging as the person who signed the writing. (p. 436).

4. SAME—*Certificate—Admissibility of Record.*

An acknowledgment certified by a justice of the peace in 1855, which omits the words, ''whose name is signed to the writing above,'' or words of similar import, is fatally defective and does not authorize recordation. (p. 436).

5. EVIDENCE—*Documents—Copy of Record—Instruments Not Recordable.*

An attested copy of a deed not properly acknowledged and, therefore, not recordable, is not evidence in lieu of the original. (p. 436).

6. ADVERSE POSSESSION—*Color of Title—Invalid Deed.*

The principal purpose of color of title is to define boundaries, and if it fails to do so with reasonable certainty, it is not admissible evidence. (p. 436).

7. SAME.

But it is not indispensable that the colorable deed should, in terms, contain a complete description of boundaries; it may expressly refer to, and adopt, some other existing paper containing them, and a paper thus referred to becomes a part of such colorable deed. (p. 436).

8. EVIDENCE—*Admissibility—Recorded Instrument.*

A paper referred to and described, as ''recorded in the Clerk's office, Braxton County Court,'' becomes a part of the paper referring to it, and if identified, may be read as evidence in connection therewith, even though the wrtiing was improperly spread on the record. The reference is to the writing of record, and not to the original paper of which the record is a copy. (p. 437).

9. ACKNOWLEDGMENT—*Authority to Take—Deputy Clerk.*

A deputy clerk, being empowered by a statute of Virginia to ''discharge any of the duties of the clerk,'' could, in his own name as such deputy, certify acknowledgments to writings, whether intended for recordation in the office of his principal, or in any other county court clerk's office in Virginia. (p. 439).

10. SAME—*Certificate—Sufficiency—Identity of Persons.*

The following certificate is *held* to be good in law and to warrant recordation in any county court clerk's office in Virginia, viz.:

"Braxton County Court Clerk's Office, November 1st 1859.

This deed from Benjamin Butler to Jeremiah Butler, was this day presented in said office, acknowledged by the said Benjamin Butler to be his act and deed.

                    Teste:          W. H. Byrne, Deputy Clerk.''

The words, ''acknowledged by the *said* Benjamin Butler,'' read in connection with the description of the deed, identify the acknowledger as the grantor. (p. 439).

11. FORCIBLE ENTRY AND DETAINER—*Nature of Possession—Question for Jury.*

If a person obtains general permission of another to occupy his land, and thereafter, and before going into possession, procures a written lease from an adverse claimant of a part of the land and ostensibly takes possession thereunder without knowledge of the former, it is for the jury to say under which claimant he holds, the question depending principally upon his *bona fides.* (p. 442).

12. WITNESSES—*Statement by Person Deceased—Admissibility.*

In a suit involving title to land, a former owner through whom one of the parties claims is an incompetent witness to prove admissions of his claim, made by an adverse claimant then deceased, notwithstanding title of such former owner passed from him involuntarily by means of a judicial sale and commissioner's deed. (p. 444).

13. ADVERSE POSSESSION—*Enlargements of Boundaries—Evidence.*

An adverse claimant under color of title can not enlarge his boundary by testimony tending to prove marked timber as corners and lines not called for in any of his colorable deeds. (p. 445).

Error to Circuit Court, Clay County.

Action by George Goad against W. D. Walker and others. Judgment for defendants, and plaintiff brings error.

*Reversed and Remanded.*

*W. E. R. Byrne* and *B. C. Eakle,* for plaintiff in error.

*Price, Smith, Spilman & Clay* and *H. B. Davenport,* for defendants in error.

WILLIAMS, JUDGE:

To a judgment in favor of defendants in an action of unlawful detainer, plaintiff obtained this writ of error. The action is to recover possession of a small triangular lot of bottom land lying on Elk River, south of the mouth of a creek called Waters Defeat. Plaintiff claims the right to

possession on two grounds, viz.: (1) That he has title to the land and, therefore, right to possession: and (2) that defendants went upon the land as his tenants, and are estopped by virtue of the relation of landlord and tenant to deny his title. Both claims are disputed by defendants. No one has had actual possession of the small lot of land until defendants went upon it about two years before this suit was brought. Plaintiff claims it is a part of a larger tract of 172 acres owned by him bordering on Elk River. The large tract is triangular in shape, having its base along Elk River and its apex on the mountan eastward from the river. His claim is that the southeastern boundary line, forming one leg of the triangle, runs from a hickory and two dogwoods on the mountain to a white oak which stood near the bank of the river below the mouth of Waters Defeat, but which has since been cut down. The line thus run includes the lot, possession of which is in controversy. Plaintiff does not pretend to have a good paper title, but attempted to prove color of title and actual, visible, exclusive and continuous possession of a part of the tract thereunder, for a period of more than ten years. But the court excluded some of his deeds as not constituting sufficient evidence of color of title. Defendants offered no proof of title whatever.

Plaintiff makes fourteen assignments of error. His first relates to the exclusion of three deeds, attested copies of which were offered as evidence, viz.: (1) Deed from James M. Corley, deputy sheriff, to John B. Williams, dated November 26, 1848; (2) deed from John B. Williams to Benjamin Butler, dated August 14, 1854; and (3) deed from Benjamin Butler to Jeremiah Butler, dated November 1, 1859. The Corley deed was admitted to record in Braxton county upon Corley's acknowledgment taken by the clerk of the county court who used the initial letters "C. B. C." after his signature to designate his official character. The certificate is headed as follows: "Braxton County Court Clerk's Office, December 4th 1848." Counsel for defendants insist that the attested copy was properly rejected for the following reasons: (a) because the deputy sheriff was not authorized to execute the deed in his own name, and that it is therefore void; (b) because the certificate of acknowledgment does not show the state in which

it was taken; and (c) because the initial letters, "C. B. C."
do not sufficiently designate the official character of the per-
son who took the acknowledgment. As to the first objection:
It is immaterial whether the deputy sheriff had authority to
make the deed or not; the instrument had the form of a deed,
and purported to convey land, and was offered simply to
prove color of title. If there was no other objection to it, it
should have been admitted as evidence of color of title. Any
writing which purports to convey land, though void for any
reason, is good as color of title, if it defines boundaries.
*Swann* v. *Thayer,* 36 W. Va. 46; *Mullan's Admr.* v. *Carper,*
37 W. Va. 215; *Robinson* v. *Lowe,* 50 W. Va. 75. It is, there-
fore, unnecessary to decide, and we do not say, whether the
deputy sheriff had power to convey. If the objections to the
acknowledgment are well taken, it follows that the deed was
not a recordable paper, and therefore an attested copy of
it could not be used as evidence. *Clark* v. *Perdue,* 40 W. Va.
300; *Cobb* v. *Dunlevie,* 63 W. Va. 398. But we think the
acknowledgment was good, for reasons to be later given when
we come to pass upon similar objections made to the acknowl-
edgment of the deed from Benjamin Butler to Jeremiah But-
ler, which we think was improperly rejected. The initial
letters "C. B. C." sufficiently designated the official character
of John P. Byrne, the clerk, and stood for the words, "Clerk
of Braxton County." The caption of the certificate shows
that the acknowledgment was taken in that office, and that
indicates clearly the meaning of the initial letters. 1 A. & E.
E. L. 531; 1 A. & E. E. L. & P., 891; and *Worley* v. *Adams,*
(Va.) 69 S. E. 929.

But it appears that the boundaries of the land, as given in
the deed, do not include the small lot in controversy. The
line which plaintiff contends includes the lot is therein
described as running from a hickory and two dogwoods,
thence "S. 60 W. 225 poles to the river, at the mouth of
Waters Defeat." No other object is called for as marking
the corner; and a line from the hickory to the mouth of
Waters Defeat does not include the lot, which lies wholly
south of Waters Defeat. It was, therefore, not error to
exclude the deed.

The metes and bounds of the 172 acres are also given in

the Williams deed. But, as therein given, they do not coincide with those given in the Corley deed. The boundaries described in the two deeds begin at the same corner, but they run around the tract of land in opposite directions. In the Williams deed they begin at three beeches on the bank of Elk River and run down the river with its meanders, the last line, down the river, calling for "S. 11 W. 80 poles *crossing Waters Defeat.*" It does not say how far, and calls for no natural or artificial object to mark the corner, not even a stake. Continuing thence, the next line is, "N. 54 E. 203 poles to a hickory and two dogwoods on top of hill." This corner is clearly established by proof; and the testimony of the surveyor, P. H. Butler, proves that a line from this corner to the white oak stump, in the small bottom, below the mouth of Waters Defeat, claimed by plaintiff as a corner, has a bearing of S. 58 W. It is thus made clearly to appear, that reversing the call and running on the degree called for in the Williams deed, to-wit, S. 54 W., the line would include the land in controversy, and even more; for the line would strike Elk River some distance below the white oak stump. But the Williams deed was not admitted as evidence for any purpose, because the acknowledgment was held to be defective, and the deed not a recordable instrument, so as to permit a certified copy to be used as evidence in place of the original, under the statute. The acknowledgment reads as follows: "Nicholas County, to-wit:

This day John B. Williams, appeared before me in *in* the aforesaid County and acknowledged the above deed, to be' his act and deed, and desired me to certify the said acknowledgment to the clerk of Braxton County, so the said deed may duly recorded.

Given under my hand this 6th day of March, 1855.

M. TRIPLETT, J. P."

The form of acknowledgment prescribed by the statute of Virginia, in 1855, was not materially different from the form required by our statute at the present time. The form then prescribed, (Sec. 3, Ch. 121 Code Va. 1849), contained the words, "whose name is signed to the writing above." Those words, or words of similar import, are essential for the purpose of identifying the person making the acknowledgment

with the person who executed the deed. The certificate should show that the officer making it knew the person acknowledging the writing to be the same person who signed it. The words quoted from the statute were intended to perform that office. Code 1849, Ch. 121, Sec. 3; Code (W. Va.) 1906, Ch. 73, Sec. 3; *Duffy* v. *Currence,* 66 W. Va. 252; 1 A. & E. E. L. & P. 102, and numerous cases cited under note 24. "It is essential that the identity of the party making the acknowledgment should appear from the certificate." 1 A. & E. E. L. (2nd ed.) 544, and numerous cases cited in note 1. The attested copy was properly rejected as evidence of color of title. But we think it should have been admitted as evidence of boundaries to be read in connection with the deed from Benjamin Butler to Jeremiah Butler, which we hold was improperly excluded as evidence of color of title, for reasons now to be given.

The Butler deed, the last of the three excluded, does not describe the land by metes and bounds, but does describe it in the following manner, viz.: "All of a certain tract of land lying in the County of Clay on the south side of Elk River, it being the same land conveyed to Benjamin Butler by John Williams and the same which the said Williams purchased under the decree of Stephen Burrows against the West Virginia Iron, Mining Company, and recorded in clerk's office, Braxton County Court, containing 172 acres." This question confronts us: Can the John Williams deed, which is not properly acknowledged and therefore not recordable although found upon the records of the clerk's office of Braxton county court, be read as evidence to supplement the description of the land given in the Butler deed which expressly refers to the former as being "recorded in Clerk's Office, Braxton County Court"? It is well settled law, that a deed referring to another deed, paper or map, for description of the land intended to be conveyed, thereby incorporates and makes a part of the deed itself, the paper so referred to. *Blowpipe Co.* v. *Spencer,* 46 W. Va. 590; *Thorn* v. *Phares,* 35 W. Va. 771; *Smith* v. *Owens,* 63 W. Va. 60; and *Holly* v. *Curry,* 58 W. Va. 70. Counsel for defendants do not controvert this general proposition, but they insist that it applies only to deeds which convey title, and does not apply to deeds serving only as color

of title. They urge that the chief, if not the only, purpose of a deed, admitted only as color of title, is to describe boundaries, and that, if the description is incomplete or imperfect on the face of the deed itself, it cannot be aided by extrinsic evidence. It is true that the chief purpose of color of title is to define boundaries. It answers the same purpose for one claiming under it that actual enclosure does for one in possession under a mere claim of title. The question is new. We do not find that it has been directly passed upon by any court. But we see no good reason why a paper offered as color of title may not incorporate some other paper, the same as may be done by other written instruments. The principle is not confined to deeds, but applies to executory contracts of almost every character. Certainty as to the boundaries claimed under color of title is the important question. A claimant should not be allowed to offer proof conflicting with the color under which he claims, and thereby enlarge the boundary of which he is lawfully entitled to claim constructive possession by virtue of actual possession of a part. The rule requiring certainty is not violated by admitting a paper, incorporated in a colorable deed by reference to it for description of boundaries; provided always the paper referred to is identified. Recordation and constructive notice thereby do not affect the question. A claimant, in possession of a part of his land, is not required to record his colorable deed in order to extend his possession to the exterior bounds thereof. No good reason occurs to us for excepting a colorable deed from the operation of the general rule respecting the incorporation of an existing paper into another by express terms of the latter. Suppose a deed, offered as evidence of color of title, referred to adjoining lands, naming the owner, for metes and bounds, could not the location of the lines of the adjoining owner be proven by evidence aliunde? We have no doubt on this question; and there does not seem to be any difference in principle between such supposed case and the one at bar. It is of course essential to identify the paper intended to be incorporated; and if the original Williams deed had been mentioned as the paper intended, the attested copy would not have been admissible to prove it, because not properly acknowledged for recordation. But the reference was not to

the original deed, but was to a writing on the records in Braxton county court clerk's office. If that writing is identified as the one referred to, it matters not that it was not properly recorded. Such a writing as the one referred to in the Butler deed is found on the record, and its identity is proven by the names of the grantor and the grantee, by the number of acres of land mentioned as contained in the tract, and by the location of the land being the same in both papers. The Williams deed should have been admitted as evidence of the description of the land intended to be conveyed by the Butler deed, but not as being itself evidence of color of title.

The record book of Braxton county was not produced, but counsel agreed at the trial that the attested copy of the deed should have the same effect as the writing on the book, if the book had been produced. This agreement had the effect to admit the copy for the purpose which we have mentioned.

The Butler deed was also objected to on account of alleged defects in the certificate of acknowledgment, which was made by the deputy clerk of Braxton county, upon which the deed was admitted to record in Clay county. The acknowledgment is as follows, viz.:

"Braxton County Court Clerk's Office, November 1st, 1859.

This deed from Benjamin Butler to Jeremiah Butler, was this day presented in said office, acknowledged by the said Benjamin Butler to be his act and deed.

Teste:                    W. P. Byrne, Deputy Clerk."

Counsel for defendants insist that the acknowledgment is defective for the following reasons: (a) a deputy clerk had no power to take acknowledgments; and (b) because of the omission from the certificate of the words, "whose name is signed to the writing above," etc. These objections are not sound. At the time the acknowledgment was taken the statute of Virginia, (Code 1849, Ch. 121, Sec. 3), expressly authorized a county court, or the clerk thereof, to admit a writing to record as to any person whose name was signed thereto, upon the certificate of his acknowledgment, made by the clerk of any other county or corporation court in the state of Virginia, "that the said writing was acknowledged by such person, or proved as to him by two witnesses before such clerk, or before the court of which he is clerk." The certificate is

in the usual form employed by clerks of county courts when a deed is acknowledged for recordation in their own offices. It will be observed that the forms of acknowledgment in the Code of 1849 were intended for the guide of justices of the peace, notaries public and commissioners. No form was prescribed for clerks, and it has been the universal custom of clerks of county courts, in the two Virginias, to use a much briefer and simpler form than the ones intended for justices and notaries, and we think the above acknowledgment is a full compliance with the statute. It identifies the paper acknowledged by naming the grantor and grantee; and the words, "the said Benjamin Butler", identify the person who acknowledged it as the same person who signed it. So that, so far as it relates to form of the certificate, we think it fully complies with the law. But, had the deputy clerk power to take and certify the acknowledgment? We think he had. Sec. 11, Ch. 163, Code of Virginia 1849, provides for the appointment of a deputy clerk, and authorizes him to "discharge any of the duties of the clerk." This statute empowered a deputy clerk to certify acknowledgments. In 1 A. & E. E. L. & P. 858, the author says: "Under a statute authorizing the deputy to discharge any of the duties of his principal, the power (i. e. to take acknowledgments) exists unless there is some express provision of law to the contrary." A number of decisions are cited in support of the text. The supreme court of appeals of Virginia expressly decided this question in *Gate City* v. *Richmond*, 97 Va. 337. It was there held that a statute empowering a deputy clerk to discharge the duties of his principal authorized him to take and certify acknowledgments. But, in the case at bar, the deputy's name only appears to the certificate. This raises another question, and that is: Should he have certified the acknowledgment in the name of his principal? While it is usual to do so, 1 A. & E. E. L. & P. 859, and is proper form, we do not think his failure to sign his principal's name invalidates the certificate. The Virginia statute prescribed no form of certifying acknowledgments, either by the clerk or by his deputy, and places no limitation upon the power given to the deputy, only the thing to be done must be a duty of his principal. We therefore think he could properly perform the duties of the

clerk in his own name as deputy. Directly in point is the case of *Commonwealth* v. *Byrne,* 20 Grat. 165. There the court held valid a certificate, made in his own name by an assistant to the commissioner of revenue, under a statute almost identical in terms with the one relating to the powers of a deputy clerk, empowering such assistant to perform the duties of his principal. See Sec. 7, Acts of Virginia 1867. While it is true, in many states, the rule requires the deputy to act in the name of his principal, that rule does not obtain in many other states. The rule depends largely upon the particular language of statutes, and because of the broad language of the Virginia statute, empowering a deputy clerk to perform any of the duties of his principal, we do not think the rule which has been adopted by most of the states should be applied in this case; and we, therefore, hold the certificate of the deputy clerk, made in his own name as deputy, to be good. In support of this holding we cite the following authorities: 1 A. & E. E. L. & P. 859, and numerous cases cited in note 10; 1 A. & E. E. L. (2nd ed.) 497, and cases cited in note 2.

*Pendleton* v. *Smith,* 1 W. Va. 16, does not apply to the case at bar. The act of the deputy, there held to be invalid, was the attestation of a writ of attachment. Sec. 9, Art. V of the Virginia Constitution, then in force, required that ''writs shall run in the name of the Commonwealth of Virginia, and bear teste by the clerk of the several courts.'' This is the ground for holding the writ, attested in that case by the deputy clerk, invalid. But see the dissenting opinion of Judge BROWN in that case.

Neither does the decision in *Webb* v. *Ritter,* 60 W. Va. 193, control this case. The acknowledgment was held invalid in that case, not because the deputy who certified it did not sign the name of his principal, but because it was his principal's acknowledgment. The clerk had signed the deed; and the policy of the law forbade the deputy to take his principal's acknowledgment, on the same ground that the clerk is forbidden to certify his own acknowledgment. What the deputy does, he does for his principal, whether done in his own name or the name of his principal. The certificate of acknowledgment to the Benjamin Butler deed was good in law, and the

attested copy thereof should have been admitted as evidence of color of title, and should have been read in connection with the boundaries of the same land given in the Williams deed.

The court permitted subsequent deeds under which plaintiff claimed to be read to the jury, but denied to them any force as evidence of color of title because they contained no boundaries and identified the tract of land by location only in a general way and by reference to former deeds which the court had excluded altogether. This action of the court constitutes plaintiff's second assignment of error. No objection was made to any of these admitted deeds on the ground of defective acknowledgments. It was not necessary that every deed in plaintiff's chain should contain metes and bounds in order to entitle it to be read as evidence of color of title. Having produced one deed defining boundaries, under which plaintiff proved actual possession of a part of the land for ten years or more, all that was necessary thereafter was to connect up with it by deeds identifying the land as the same. All subsequent deeds do so identify it. The Oliver Butler deed describes it as 172 acres on the south side of Elk River, and also by reference to the Butler deed which we have held should have been admitted; the Cadle deed identifies the tract in almost the same language; the Belcher deed to Duffield identifies it by locating it on the south side of Elk River, by giving the quantity as 172 acres and by reference to the Cadle deed. While Duffield owned it, it was sold under decrees of court in a chancery suit brought against him by William Belcher, and was purchased by plaintiff and conveyed to him by a commissioner of court. The land is identified in the bill and proceedings, and by the commissioner's deed, by quantity, by general location, and by reference to the Cadle deed to Belcher. This was sufficient identification. All the deeds following the Benjamin Butler deed, as well as it, should have been admitted as color of title. The court's instruction to the jury, limiting the purpose for which the deeds were admitted to the ascertainment of the one question, whether the defendants entered upon the land as plaintiff's tenants, was prejudicial to plaintiff's case. The court in effect, told the jury that plaintiff had no color of title.

The third assignment of error relates to the court's refusal

to give plaintiff's instructions Nos. 6 and 7. This assignment is not well taken. No. 6, we think, was properly refused, because it fails to submit to the jury two important questions of fact, viz.: (1) whether, at the time Reed went into possession, he knew the location of the lines to which plaintiff claimed; and (2) whether he actually took possession under the lease from the Elk River Coal & Lumber Association, or under permission given by the letter from plaintiff. The letter is not in evidence, but according to its contents as proven it was general in its terms, and gave Reed the right to occupy any part of plaintiff's land for the purpose of stacking lumber. But it did not refer to any particular part of the land, and especially did it not refer to the land below the mouth of Waters Defeat. Reed testifies that, at the time he wrote to plaintiff for such permission, he contemplated using the land at the mouth of Dille Run, which is some distance from the lot now in dispute. If, before taking the lease from the Elk River Coal & Lumber Association, Reed ascertained that it claimed the land, and took a lease from it, in good faith, and went into possesion under them, he is not estopped by his correspondence with plaintiff to deny his title. If he took possession under the association, he was not plaintiff's tenant. It is not pretended that plaintiff actually put him in possession, or that he pointed out to him his boundaries.

No. 7 was properly refused, because it does not submit to the jury the controverted fact, whether Reed went into possession under the lease from the association. It assumes, as a matter of law, that he took possession under permission of plaintiff. He had a right to take a lease from any one whom he believed to be the owner, and the right to take possession thereunder. Possession was not taken until after he had procured a lease from the Elk River Coal & Lumber Association, and it was for the jury to say whose tenant he was.

The fourth error assigned relates to the giving of thirteen instructions for defendants. It is unnecessary to discuss them sereatim, as the error in giving most of them was superinduced by the error in refusing to admit plaintiff's deeds as evidence of color of title. The case then went to the jury as if plaintiff had shown no color, but only claim of title. Inasmuch as plaintiff did not pretend to have title to the small lot

in dispute otherwise than by constructive possession under color of title, it followed necessarily that, when some of his deeds were excluded, and the others denied the force of evidence of color of title, he was bound to fail, unless the jury believed defendants took possession as his tenants. Instructions Nos. one, two, three, four, five, seven, eight, nine and twelve are erroneous because they ignore the question of plaintiff's title and make his right of recovery depend solely upon proof that defendants are his tenants. Nos. six, ten, eleven and thirteen, are instructions intended to guide the jury in determining whether or not the relation of landlord and tenant existed between plaintiff and defendants. They state the law correctly and, not making plaintiff's recovery depend upon that one fact alone, they were properly given. They are not binding instructions.

The fifth, eleventh and twelfth assignments of error relate to the refusal of the court to admit, as evidence, certain conversations between Andrew Brockerhoff and James G. Duffield, and between said Brockerhoff and Elery Dickey. Andrew Brockerhoff was, at that time, one of the joint owners of a large boundary of land which, apparently, included all of the 172 acres claimed by plaintiff; and the excluded testimony tended to prove a conversation between Duffield and said Brockerhoff, wherein the latter admitted that he, 'and those jointly interested with him, did not claim the land then occupied by Duffield, which is the same now claimed by plaintiff. But Duffield, being then the owner as well as the occupier of the land, and Brockerhoff having since died, was an incompetent witness by virtue of Sec. 23, Ch. 130, Code. He was a person through whom plaintiff derives title. But Dickey was competent and his testimony was relevant and should have been admitted. It tended to prove that Brockerhoff knew that Duffield was in possession of the land, claiming it as his own, and that Brockerhoff recognized his claim, at least to the land actually occupied.

The sixth assignment is the refusal of the court to permit surveyor P. H. Butler to answer certain questions respecting the running of certain lines. If this was error it was cured by the testimony of Butler, subsequently admitted, concerning the same matter.

The seventh, eighth, ninth and tenth assignments relate to the refusal of the court to permit certain witnesses to testify who owned or claimed the land, and that the white oak tree had been pointed out to them, many years ago, by certain persons, as a corner to the Butler land. In the absence of a paper amounting in law to color of title defining boundaries, a claimant of land can not extend his possession so as to include land not occupied, by proving marked lines and corner trees, or by occasional cutting of timber to such marked lines. His possession must be shown by enclosure, or by actual occupation and cultivation. The court had excluded plaintiff's color of title, and we can only suppose that he excluded the testimony of witnesses also, respecting marked corners and lines, for the reason that actual possession, under claim of title only, can not thus be extended. But where a party, as does plaintiff in this case, claims under color of title defining boundaries, he has a right to identify the lines on the ground with those described in his deed. Such testimony, however, could not be admitted to enlarge the boundaries beyond those of his deed. But, as we have said, the evidence tends to prove that the marked line from the hickory and two dogwoods to the white oak stump is within, rather than without the boundaries of the John Williams deed which is made a part of the Benjamin Butler deed. It therefore follows that the testimony should have been admitted, although, in our view of the case, it is of little importance because the lines described in the colorable deed, rather than the marked lines on the ground, must control.

The thirteenth assignment charges error in allowing defendants to dispute plaintiff's title, on the ground that he was their landlord. This was not error. The relation of landlord and tenant was a controverted fact for jury determination.

The fourteenth, and last, assignment of error is the refusal of the court to set aside the verdict. It follows from what we have already said that this assignment is well taken.

We reverse the judgment, set aside the verdict and remand the case for a new trial.

                                  *Reversed and Remanded.*