Statement.

𝔖𝔱𝔞𝔲𝔫𝔱𝔬𝔫.

## FARMERS BANK OF SOUTHWEST VIRGINIA V. MC-GAVOCK AND OTHERS.

September 11, 1916.

1. CONSTITUTIONAL LAW—*Attestation of Writs—Statutes.*—A summons which concludes "Witness, James Rider, clerk of said court at the court house, the 14th day of January, 1896, in the 120th year of the Commonwealth. Jos. C. Cassell, Dep. Clerk" is sufficiently attested by the clerk, within the meaning of the constitutional requirement that writs shall "be attested by the clerks of the several courts."

2. CLERKS—*Powers of Deputy—Constitutional Law—Statutes.*—Section 817 of the Code empowering deputy clerks to discharge any of the official duties of their principals unless expressly forbidden by law does not contravene section 26 of the Constitution of this State, and is a valid enactment. Neither the Constitution nor the statute *expressly forbids* a deputy clerk to discharge the official duty imposed upon his principal in the matter of attesting writs that emanate from his office.

3. STATUTES—*Practical Construction—Appeal and Error.*—Where the construction of a statute is doubtful, this court would not feel justified in over-ruling the practical construction placed thereon by the administrative officers of the Commonwealth for generations, and impose upon the public the evils that would flow from such ruling.

Error to a judgment of the Circuit Court of Wythe county on a motion to quash an execution. Judgment for the plaintiff in the motion. Defendant assigns error.

*Reversed.*

The opinion states the case.

*E. Lee Trinkle, W. B. Kegley* and *Thomas & Thomas,* for the plaintiff in error.

W. S. *Poage* and S. B. *Campbell*, for the defendant in error.

WHITTLE, J., delivered the opinion of the court.

This writ of error is to an order of the Circuit Court of Wythe county, abating an office judgment entered in that court in behalf of plaintiff in error, the Farmers Bank of Southwest Virginia, against J. C. McGavock and J. R. McGavock, and quashing an execution issued thereon.

The order rests upon the ground that there was no appearance by the defendants and no service of lawful process upon them. The correctness of the decision, therefore, (the fact of non-appearance being admitted) depends upon the validity of the original writ.

The writ runs in the name of the Commonwealth of Virginia, is directed to the sheriff of Wythe county, the body of it is in due form, and it concludes as follows: "Witness, James Rider, clerk of said court at the court house, the 14th day of January, 1896, in the 120th year of the Commonwealth. Jos. C. Cassell, Dep. Clerk."

It was successfully maintained by the defendants in the circuit court that the writ was void because signed by the deputy clerk in his own name instead of in the name of the clerk.

Section 26, article 6, of the Constitution of Virginia, declares that: "Writs shall run in the name of the Commonwealth of Virginia, and be attested by the clerks of the several courts. Indictments shall conclude 'against the peace and dignity of the Commonwealth.'"

The foregoing provision, with immaterial variations, is found in all the Constitutions of the Commonwealth,

beginning with the Constitution of 1776 and including the present Constitution of 1902. The clause has always been accompanied by subsidiary legislation establishing the office of deputy clerk, and clothing that statutory officer, in effect, with all the powers and duties of his principal. Thus, section 817 of the Code of 1887 (the statute in force when the writ in question was issued), among other things, provides that the clerk, with the consent of his court, or of the judge thereof in vacation "(said consent in vacation being given in writing), may appoint one or more deputies, who may discharge any of the official duties of their principal during his continuance in office, and until his successor is qualified, unless it be some duty, the performance of which by a deputy is expressly forbidden by law. Any such deputy may be removed from office either by his principal or by the court, or by the judge in vacation."

That section is carried into the Code of 1904, unchanged so far as the question here involved is concerned, though the term of office of a deputy clerk is measured in the present statute by that of his principal, and he may not discharge any official duty after the termination of the principal's term. This auxiliary legislation is the result of necessity, since, without it, the business of the clerk's office would stop during the absence of the clerk from sickness or other cause.

Defendants in error strongly rely on the case of *Pendleton* v. *Smith*, 1 West Va., 16, as sustaining their contention. It was there held that the section of the Constitution under review (the Virginia Constitution being then operative in that State) required writs to be attested by the clerk subscribing his name to the process, either personally or by deputy, and that an attachment subscribed by the deputy clerk in his own

name was "fatally defective," and on motion of the defendant should be quashed. The court consisted of three judges, one of whom dissented, being of opinion that the signature of the deputy clerk was a compliance with the constitutional requirement. Fifteen years later that court, in *Ambler, Trustee,* v. *Leach,* 15 W. Va. 677, in an able and exhaustive opinion delivered by Greene, president, (in which three out of the four judges concurred) held that a writ, otherwise, regular, not signed either by the clerk or his deputy was not absolutely void, but voidable, and that an office judgment entered thereon was valid and binding unless set aside on motion of the defendant to quash the writ, or in some other manner in the suit in which the judgment was rendered, or by writ of error. The learned judge pointed out that much looseness prevailed in the use of the terms *void* and *voidable,* and that the interchangeable application of these words had led to no little confusion. After reviewing numerous decisions, he observes: "The decided weight of authority is against holding a writ absolutely void, because not signed by the clerk, or not having the seal of the court attached to it, or not being properly attached, or for not running in the name of the State, even where these things, or any of them, are required in the Constitution; but such defects in a writ render it only voidable." He furthermore says: "I concur with the general weight of authority in cases of this character and the Virginia and West Virginia decisions are not inconsistent." Consequently, the court denied relief to a trustee, to whom the judgment debtor had conveyed his property to secure debts, in a suit in equity to have the judgment declared void.

The order under review was made nearly twenty years after the office judgment had become final. In

33

the meantime a creditors' suit was instituted against the defendants to subject their lands to the payment of liens; an account of liens was ordered, and the judgment in question reported as a subsisting lien, and the commissioner's report confirmed without exception.

That part of section 26, article 6, of the Constitution involved on this appeal has never been construed by this court, so that we may approach the consideration of the question with open minds. Its determination depends largely upon the influence of section 817 of the Code upon the constitutional provision. If that section be a valid enactment, and the duties thereby devolved upon duputy clerks do not contravene section 26, then the writ in the present case is neither void nor voidable, but is a lawful process.

In this connection let us not overlook the oft-repeated postulate that "The State Constitution, unlike the Federal Constitution in this particular, is a restraining instrument, and in the matter of enacting laws the legislature is omnipotent, except in so far as it is restrained by the State or Federal Constitution, either in express terms or by necessary implication. Its enactments, therefore, are always presumed to be constitutional, and can never be declared otherwise, except when they *clearly and plainly* violate the Constitution. All doubts are, resolved in favor of their validity, and, in resolving doubts, the legislative construction put upon the Constitution is entitled to great consideration, though it will not be given controlling effect." *Button* v. *State Corporation Commission*, 105 Va. 634, 54 S. E. 769, and cases cited.

Section 817, as we have seen, makes provision for the appointment of deputy clerks, and declares that they "may discharge any of the official duties of their

principal during his continuance in office, and until his successor is qualified, unless it be some duty, the performance of which by a deputy is expressly forbidden by law."

Section 26 of the Constitution directs that writs shall be attested by the clerk; but neither Constitution nor statute *expressly forbids* that a deputy clerk shall discharge the official duty imposed upon his principal in the matter of attesting writs that emanate from his office.

The body of the writ reads: "Witness, Jas. A. Rider, clerk of said court   . ." and that recital is supplemented by the signature, "Jos. C. Cassell, Dep. Clerk."

In the case of *Pendleton* v. *Smith, supra*, the West Virginia court held that the constitutional requirement would have been satisfied if the name of the clerk had been subscribed to the writ by the deputy for him. We have no statute prescribing that a deputy clerk's official signature shall include the name of the principal. Nor is it perceived how that form of signing could add force to the authentication of a writ bearing the official signature of the deputy, where, as in this instance, the principal's name already appeared in the attestation clause.  The deputy's official signature, in such case, can only mean a signing for his principal.  It is otherwise with a deputy sheriff who was expressly required by statute to sign the name of his principal as well as his own name to a return on process.  Code, 1887, sec. 900.

In *Town of Gate City* v. *Richmond*, 97 Va. 339, 33 S. E. 615, it was said: "One of the duties the clerk is authorized by law to discharge is taking the acknowledgment to deeds, and, it being nowhere provided by law that his deputy shall not perform that duty, it follows that he can perform it by the express terms

of the section quoted." (Code 1875, ch. 159, sec. 8, p. 1068.)

In 5 R. C. L., sec. 13, p. 629—under the title, "Deputy Clerks of Court"—the governing principle with respect to the powers of that class of officers is lucidly set forth as follows: "A deputy in general is defined as one who occupies in right of another, and for whom his superior shall answer. He has no interest or estate in the office, but is as servant to the officer. As a matter of practice it is as often the case as otherwise that the duties of a clerk of court in the court room are attended to by a deputy, while the principal officer is engaged elsewhere in the performance of other duties appertaining to his office. In measuring the authority of deputy clerks of courts in regard to ministerial matters, the courts recognize the general principle that a deputy cannot regularly have less power than his principal. As a general rule, therefore, a deputy clerk may perform all ministerial acts appertaining to the office of his principal; but the judicial powers of a principal clerk cannot be delegated to his deputy, unless the statute so permits. In those jurisdictions where a deputy clerk is recognized as an independent public officer, and is endowed by statute with authority to do any act which his principal may do, authority exists in the deputy himself to act alone by operation of law, and not being derived solely through the principal, it is well executed in the name of the deputy alone without mention of his principal; but where a deputy's authority is regarded as a derivation and subsidiary one, it is generally held that he must act in the name of his superior."

This doctrine is well supported by authorities cited in the notes. To the same effect, also, is Mechem on Public Officers, sec. 585.

In this State for more than a century—certainly since the act of February 1, 1808, (Rev. Code 1808, sec. 13, p. 152) the legislature has seen fit to create independent public officers, known as deputy clerks, and to invest them with authority to discharge any of the official duties of the principal, unless it be some duty the performance of which is *expressly forbidden* by law. Notwithstanding the fact that this species of legislation has kept even pace with the various constitutional provisions in respect to the duty of clerks to attest writs, and has generally been observed, no constitutional convention has found it necessary or expedient to place limitation upon the power of the General Assembly to endow a deputy clerk with authority to do any act which his principal might do.

As was said by Keith, P., when considering the constitutionality of the act giving police justices and justices of the peace concurrent jurisdiction with the county and corporation courts of certain criminal cases: "When it appears that courts of all grades in the State, from justices of the peace to this court, have gone on uninterruptedly for many years to exercise jurisdiction under a statute, and that during all that time there has been no doubt entertained or question raised as to the constitutionality of the law—when all this has been done in the presence of an able and inquisitive bar—a strong presumption is raised that the attack has not been made upon the constitutionality of the law, because, in the judgment of the courts and of the profession, no such ground of objection existed." *Brown* v. *Epps*, 91 Va. 726, 730, 21 S. E. 119, 27 L. R. A. 676.

Upon these considerations, we are of opinion that the writ, the validity of which is drawn in question in this controversy, is well signed. Yet, if the question were doubtful, we would not feel justified in over-

ruling the practical construction generally placed by clerks and their deputies on the Constitutions and statutes of the State for generations, and impose upon the public the evils that would flow from such ruling.

The order appealed from must be reversed.

*Reversed.*